**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| NATIONAL ALLIANCE FOR | ) | |
| ACCESSIBILITY, INC., a Florida | ) | |
| non-profit corporation, and | ) | |
| DENISE PAYNE, individually, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:10CV932 |
| | ) | |
| RITE AID OF NORTH CAROLINA, INC., | ) | |
| a North Carolina Corporation, and | ) | |
| RITE AID HDQTRS CORP., a Delaware | ) | |
| corporation, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION, ORDER AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**</u>

This matter comes before the undersigned United States Magistrate Judge for a recommendation, pursuant to the Court's Amended Standing Order No. 30, on the Motion to Dismiss and/or Alternatively, Partial Motion to Strike (Docket Entry 7) filed by Rite Aid of North Carolina, Inc. ("RANC") and Rite Aid Hdqtrs Corp. ("RAH" collectively with RANC "Defendants"), as well as for a ruling on the "Motionto [sic] Amend Complaint to Add EDC Drug Stores, Inc. a North Carolina Corporation, as a Defendant with Memorandum of Law" (Docket Entry 13) filed by National Alliance for Accessibility, Inc. ("NAA") and Denise Payne ("Payne) and "Motionto [sic] Amend Complaint to Add EDC Drug Stores, Inc. a North Carolina Corporation, as a Defendant" (Docket Entry 16) filed by Plaintiffs NAA and Payne. For the reasons stated herein, the Court should grant Defendants' Motion to Dismiss (Docket Entry 7), and Plaintiff's Motions to Amend (Docket Entries 13 and 16) are denied.

## I.  BACKGROUND

Plaintiffs bring this action, pursuant to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., alleging that, at the "Rite Aid Pharmacy, located at 1218 Raleigh Road, Chapel Hill, North Carolina[,] 27515" (the "Property"), Payne encountered "architectural barriers . . . which discriminate against her on the basis of her disability and which have endangered her safety." (Docket Entry 1 at 1-3 & 12.)

Plaintiff Payne, a Florida resident, has cerebral palsy which "renders her paralyzed from the waist down, and unable to use her arms and hands to easily grasp objects" and "[she] requires the use of a wheelchair . . . ." (Id. at 2-3.) Plaintiff NAA, a Florida non-profit corporation, alleges that its members include Payne and other "individuals with disabilities" and its purpose is "to represent the interest of its members by assuring places of public accommodation are accessible to and usable by the disabled and that its members are not discriminated against because of their disabilities." (Id. at 3-4.) Plaintiffs characterize themselves as "advocates for the disabled when suing places of public accommodation that are in violation of the federal civil rights law . . . ." (Id. at 5-6.)[1]

_____

[1] One court recently observed:  "In addition to this action, Payne has filed at least thirty-two (32) other ADA lawsuits in North Carolina.  In total, plaintiff has filed one hundred and seventy-one (171) ADA lawsuits since 2008." National Alliance for Accessibility, Inc. v. Waffle House, No. 5:10-CV-375-FL, 2011 U.S. Dist. LEXIS 69815, at *3 (E.D.N.C. Jun. 29, 2011) (unpublished). Defendants claim that: "This action by Plaintiff Payne is one of approximately 150 similar litigations she has filed against various public establishments over
(continued...)

According to Tracy L. Landis, the Senior Manager, Administrative Claims & Litigation for Rite Aid Corporation ("Rite Aid Corp."), Rite Aid Corp. and RAH are Delaware corporations with their principle place of business in Pennsylvania. (Docket Entry 7, Ex. 1, ¶¶ 2, 4.) She states that "[RANC] is a wholly owned subsidiary of Rite Aid Corp." (Id., Ex. 1, ¶ 3.) Plaintiffs have alleged that RANC is a North Carolina corporation. (Docket Entry 1 at 1.) Landis also declares that neither RANC, nor RAH "own, operate, lease, lease to, or control the [Property]." (Docket Entry 7, Ex. 1, ¶¶ 3, 5.) Rather, EDC Drug Stores, Inc. ("EDC"), "a wholly owned subsidiary of Rite Aid Corp.[,]" is "[t]he tenant entity that leases and operates the [Property] . . . ." (Id., Ex. 1, ¶ 7.)

Plaintiffs have submitted Payne's affidavit in which she avers in relevant part that:

"[She] travel[s] back and forth between Florida and North Carolina because [she] ha[s] business associations, friends in, and continuing connections with North Carolina" (Docket Entry 21, ¶ 3; see id., ¶ 6);

"[She] [is] in the process of establishing a local chapter of [NAA] in Asheville and in Raleigh, so [NAA] will have a presence in Florida and North Carolina" (id., ¶ 4 (emphasis added));

"On June 22, 2011, Tamara Campbell and [Payne] are scheduled to meet Vicky Smith of Disability Rights of North Carolina at their

---

[1](...continued)
the past three years." (Docket Entry 8 at 2.) In a footnote, they state they reached this determination by "searching her name in Pacer." (Id. at 2 n.1.)

-3-

corporate headquarters in <u>Raleigh</u> . . ." (<u>id.</u>, ¶ 7 (emphasis added));

"On June 11, 2010, Tamira Campbell and [Payne] met in <u>Raleigh, North Carolina</u> with Janice Willmott of Disability Rights North Carolina and their privately funded non-profit organization named North Carolina Disability Action Network . . ." (<u>id.</u>, ¶ 8 (emphasis added));[2]

"From July 13 - 24, 2010, [Payne] attended the annual SUUSI retreat . . . in <u>Radford, Virginia</u>. [She] travelled . . . through <u>South Carolina, Virginia, North Carolina, Georgia</u> and stay[ed] overnight along the trip" (<u>id.</u>, ¶ 9 (emphasis added));

"[Payne] was in <u>North Carolina</u> on July 24, and 25th 2010. [She] was in <u>Greensboro</u> . . . . From there [she] travelled to <u>Winston-Salem, North Carolina</u> . . ." (<u>id.</u>, ¶ 10 (emphasis added));

"This year, on October 19, 20 and 21, 2011, [she is] scheduled to attend meetings . . . in <u>Asheville</u>[,] <u>North Carolina</u>" (<u>id.</u>, ¶ 11 (emphasis added)).[3]

Payne's affidavit also asserts that "when [she] was driving through North Carolina, in Chapel Hill, on June 10, 2010, [she]

---

[2] In her affidavit, Payne refers to Tamra Campbell and Tamira Campbell (<u>see</u> Docket Entry 21, ¶¶ 7, 8), but does not explain her relationship to these individuals or provide sufficient information for the Court to determine whether the similarity of the names reflects a spelling error.

[3] Plaintiffs claim that they have submitted "a letter to counsel" as an Exhibit B to their Response (Docket Entry 15 at 2), and make other factual claims relying on an Exhibit C to their Response (<u>id.</u> at 6). Plaintiffs, however, have not filed either exhibit. (<u>See id.</u>) They also assert other facts which lack any citation to the record. (<u>See id.</u> at 2-6.) The Court does not rely on any of these assertions which lack record support.

went shopping at the Rite Aid at 1218 Raleigh Road." (Docket Entry 21, ¶ 12.) Plaintiffs allege that with respect to the Property "numerous ADA violations and barriers to access exist" with respect to the lack of signs in interior spaces, the design of the restrooms, and the lack of "policies and procedures . . . to deal with disabled individuals and [] to put in place and maintain an ADA-compliant facility." (Docket Entry 1 at 8.) Plaintiffs claim that "Payne desires to visit the [Property], not only to avail herself of the goods and services available at the property but to assure herself that this property is in compliance with the ADA . . . ." (Id. at 6.) They also assert that "[she] is aware that it will be a futile gesture to re-visit the property until it becomes compliant with the ADA." (Id.)

Plaintiffs' Complaint alleges that Defendants violated Title III of the ADA, 42 U.S.C. § 12181 et seq., and requests that the Court: (1) issue a declaratory judgment; (2) injunctive relief; (3) award attorneys fees; and (4) award other "just and proper" relief. (Docket Entry 1 at 12.) Defendants thereafter moved to dismiss. (Docket Entry 7.) Plaintiffs responded (Docket Entries 14 and 15), and Defendants filed their Reply (Docket Entry 25).

In addition, Plaintiffs filed a motion to amend, requesting permission to add EDC as a Defendant (Docket Entry 13 at 1), along with a supporting memorandum (Docket Entry 17). Six days later, Plaintiffs filed a second motion to amend requesting the same relief (Docket Entry 16 at 1), and again filed another supporting brief (Docket Entry 19). Instead of filing a response, Defendants

characterize their Reply to their motion to dismiss as a "Reply to Plaintiffs' [second] Motion to Amend Complaint." (Docket Entry 25 at 1.) Plaintiffs did not file a reply. (<u>See</u> Docket Entries from June 24, 2011, to present.)

## II. DISCUSSION

The Court first discusses Defendants' Motion to Dismiss (Docket Entry 7), and then proceeds to address Plaintiffs' motions to amend (Docket Entries 13 & 16).

### A. Motion to Dismiss

Defendants move to dismiss this matter for lack of standing pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Docket Entry 7 at 1.) Alternatively, they move, pursuant to Rules 12(b)(1), 12(b)(6) and 12(f), to "dismiss and/or strike the Complaint's allegations related to the men's restroom for lack of standing[.]" (<u>Id.</u>) As another alternative, if Plaintiffs have standing, Defendants request dismissal pursuant to Rule 12(b)(6) for failure to state a claim and/or Rule 12(b)(7) for failure to join a proper party. (<u>Id.</u>)

#### 1. Rule 12(b)(1) Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may assert that a court lacks subject matter jurisdiction over a plaintiff's complaint, including by challenging a plaintiff's standing. <u>See, e.g.</u>, <u>White Tail Park, Inc. v. Stroube</u>, 413 F.3d 451, 459 (4th Cir. 2005). "When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff."

Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945
F.2d 765, 768 (4th Cir. 1991). On a Rule 12(b)(1) motion to
dismiss for lack of subject matter jurisdiction, "the district
court may consider evidence outside the pleadings without
converting the proceeding to one for summary judgment." White Tail
Park, 413 F.3d at 459 (internal quotation marks omitted).

The United States Court of Appeals for the Fourth Circuit has
explained that "when a defendant asserts that the complaint fails
to allege sufficient facts to support subject matter jurisdiction,
the trial court must apply a standard patterned on *Rule 12(b)(6)*
and assume the truthfulness of the facts alleged." Kerns v. United
States, 585 F.3d 187, 193 (4th Cir. 2009) (italics in original).
"On the other hand, when the defendant challenges the veracity of
the facts underpinning subject matter jurisdiction, the trial court
may go beyond the complaint, conduct evidentiary proceedings, and
resolve the disputed jurisdictional facts." Id. Moreover, the
Fourth Circuit has stated that "when the jurisdictional facts are
inextricably intertwined with those central to the merits, the
court should resolve the relevant factual disputes only after
appropriate discovery, unless the jurisdictional allegations are
clearly immaterial or wholly unsubstantial and frivolous." Id.

## 2. Standing

"[T]he question of standing is whether the litigant is
entitled to have the court decide the merits of the dispute or of
particular issues." Warth v. Seldin, 422 U.S. 490, 498 (1975).
"This inquiry involves both constitutional limitations on federal-

court jurisdiction and prudential limitations on its exercise." _Id._ "In both dimensions it is founded in concern about the proper -- and properly limited -- role of the courts in a democratic society." _Id._ With respect to the constitutional limitations, the standing analysis imports justiciability, i.e., "whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art[icle] III." _Id._

The United States Supreme Court has identified three elements to establish the constitutional minimum of standing:

> First, the plaintiff must have suffered an injury in fact -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

_Lujan v. Defenders of Wildlife_, 504 U.S. 555, 560-61 (1992) (internal citations, brackets, ellipses and quotation marks omitted).

"When a plaintiff seeks injunctive relief, the 'injury in fact' element of standing requires more than simply an allegation of defendant's prior wrongful conduct." _Harty v. Luihn Four, Inc._, 747 F. Supp. 2d 547, 551-52 (E.D.N.C. 2010) (citing _City of Los Angeles v. Lyons_, 461 U.S. 95 (1983)). Rather, a plaintiff must show a "real or immediate threat that the plaintiff will be wronged again -- a likelihood of substantial and immediate irreparable injury." _Lyons_, 461 U.S. at 111 (internal quotation marks

omitted). "In other words, 'to establish standing to pursue injunctive relief . . . under the ADA, [the plaintiff] must demonstrate a *real* and *immediate* threat of repeated injury in the future.'" National Alliance for Accessibility, Inc. v. Waffle House, Inc., No. 5:10-CV-375-FL, 2011 U.S. Dist. LEXIS 69815, at *5 (E.D.N.C. Jun. 29, 2011) (unpublished) (ellipse, bracket and emphasis in original) (quoting Chapman v. Pier I Imports Inc., 631 F.3d 939, 946 (9th Cir. 2011)) (emphasis added).

A plaintiff's "profession of an 'intent' to return to the places [she] had visited before . . . is simply not enough." Lujan, 504 U.S. at 564. "Such 'some day' intentions -- without any description of concrete plans, or indeed even any specification of when the some day will be -- do not support a finding of the 'actual or imminent' injury . . . ." Id. "Accordingly, in determining whether plaintiff has demonstrated a 'real and immediate threat of future harm' as required to bring an ADA claim, this [C]ourt looks to (1) the proximity of plaintiff's residence to the property in question, (2) plaintiff's past patronage of the public accommodation, and (3) the definitiveness of plaintiff's plan to return." Waffle House, 2011 U.S. Dist. LEXIS 69815, at *5. "In addition to these three factors, other courts also have considered whether [the] plaintiff frequently travels near the establishment." Id.

"The standing requirement must be satisfied by individual and organizational plaintiffs alike." White Tail Park, 413 F.3d at 458. The Supreme Court has recognized that "an association may

have standing in its own right to seek judicial relief from <u>injury to itself</u> and to vindicate whatever rights and immunities the association itself may enjoy." <u>Warth</u>, 422 U.S. at 511 (emphasis added). "Additionally, an organizational plaintiff may establish associational standing to bring an action in federal court on behalf of its members when: (1) its members would otherwise have standing to sue as individuals; (2) the interests at stake are germane to the group's purpose; and (3) neither the claim made nor the relief requested requires the participation of individual members in the suit." <u>White Tail Park</u>, 413 F.3d at 458 (internal quotation marks omitted).

### 3. Analysis

Defendants argue that, pursuant to Rule 12(b)(1), "Plaintiffs lack standing to pursue their ADA Title III claim against Defendants." (Docket Entry 8 at 4.)[4]

#### i. Payne

First, Defendants claim that "an asserted general intention that Payne someday 'desires' to return to the [Property], without more, is insufficient" to satisfy the constitutional minimum injury in fact element. (Docket Entry 8 at 8 (internal citation omitted).) They identify various factors that weigh against her returning to the Property including: (a) "[she] is [not] 'proximate' to the [Property]" (<u>id.</u> at 10); (b) "[she] does not

---

[4] Because Defendants' motion should be granted based on Rule 12(b)(1), the Court need not address Defendants' remaining arguments premised on Rules 12(b)(6), 12(f), and 12(b)(7) (Docket Entry 8 at 4-7).

allege that she has visited this property more than once" (id.); (c) "[her] intent to return to North Carolina . . . is too vague" (id. at 11); (d) "she has alleged no facts to indicate how frequently she plans on traveling to North Carolina, or whether she currently has any such plans" (id.); and (e) "[her] status as a plaintiff in more than 150 similar litigations" (id.). Next, they contend that she does not establish the "prudential component of standing," because "[she] is merely trying to invoke others' legal rights . . . ." (Id. at 12.)[5]

### a. Proximity

With respect to the proximity element, Defendants note that "[Payne] lives in Florida, and the [Property] . . . is located in Chapel Hill, North Carolina - hundreds of miles away from each

_____

[5] Defendants argue that Payne's affidavit should not be considered:

. . . Payne attempts to bolster her standing argument by providing a post-Motion affidavit indicating that she has traveled to North Carolina in the past and intends to travel to North Carolina in the future. Significantly, however, standing must exist at the time an action is commenced. As such, "belated efforts to bolster standing [such as by affidavit] are futile." [*Access 4 All, Inc. v. Wintergreen Commercial P'ship, Ltd.*, No. 3:05-CV-1307-G, 2005 U.S. Dist. LEXIS 26935 (N.D. Fla. Nov. 7, 2005) (unpublished)] *citing Equal Access for All, Inc. v. Hughes Resort, Inc.*, [No. 504CV178MCR,] 2005 WL 2001740[,] at *5 (N.D. Fla. Aug. 10, 2005) [(unpublished)] (quoting *Moyer v. Walt Disney Work* [sic] *Company*, 146 F. Supp. 2d 1249, 1253 (M.D. Fla. 2000)). Accordingly, Payne's attempt to satisfy her standing requirement at this later date . . . fails . . . .

(Docket Entry 25 at 5 (first bracket in original, internal citations omitted, non-bracketed emphasis in original). In light of Fourth Circuit authority which appears to permit the use of such affidavits, see White Tail Park, 413 F.3d at 459 (on Rule 12(b)(1) motion "the district court may consider evidence outside the pleadings" (internal quotation marks omitted)), the Court should not base its ruling on this argument by Defendants.

other." (Docket Entry 8 at 10.) This consideration weighs against standing. See Waffle House, 2011 U.S. Dist. LEXIS 69815, at *6-7 (ruling that fact of plaintiff's Florida residence more than 700 miles from defendant's North Carolina restaurant weighs against standing); Norkunas v. Park Rd. Shopping Ctr., Inc., No. 3:10-cv-210-FDW-DSC, 2011 U.S. Dist. LEXIS 41431, at *9 (W.D.N.C. Apr. 15 2011) (unpublished) (finding 120-mile distance between plaintiff's residence and defendant shopping center "too great for the Court to consider it likely that Plaintiff will have occasion to return to Defendant's establishment"); National Alliance for Accessibility, Inc. v. Tunnel Rd. (E & A) LLC, No. 1:10cv282, 2011 U.S. Dist. LEXIS 50637, at *8-10 (W.D.N.C. Apr. 8, 2011) (unpublished) (holding that plaintiff had not met burden of demonstrating standing where defendant's establishment was in North Carolina and plaintiff lives in Florida), recommendation adopted, 2011 U.S. Dist. LEXIS 50771 (W.D.N.C. May 10, 2011) (unpublished).

Plaintiffs respond that "it is irrelevant that [Payne] lives in Florida . . . given that she has many business contacts in the area, and already stopped at that Rite Aid once, and Rite Aid is her chosen pharmacy." (Docket Entry 15 at 18 (internal citation to the record omitted).) Plaintiffs' argument lacks persuasive force in that they fail to cite any authority for the proposition that "business contacts in the state" or a single prior visit render proximity considerations irrelevant. (See id.)

Thus, the great distance between Payne's Florida residence and the Property in North Carolina weighs against finding that she will return.

### b. Past Patronage

Defendants observe that "Payne does not allege that she visited the property more than once." (Docket Entry 8 at 10.)[6] Courts in the Fourth Circuit have recognized that a single visit to a property does not support a finding of an injury-in-fact. See Waffle House, 2011 U.S. Dist. LEXIS 69815, at *6-7 (ruling that plaintiff's failure to allege visits to property other than single occasion which formed basis of her complaint weighs against finding standing); Norkunas, 2011 U.S. Dist. LEXIS 41431, at *10 (holding that plaintiff's past patronage of defendant's establishment consisting of single occasion which gave rise to suit weighs against finding plaintiff will likely suffer future harm); Harty v. Tathata Inc., No. 5:10-CV-113-WW, 2011 U.S. Dist. LEXIS 35136, at *11-12 (E.D.N.C. Mar. 31, 2011) (unpublished) (finding that plaintiff failed to demonstrate substantial likelihood of future injury where plaintiff only visited defendant's business once). Payne has not alleged that she visited the Property more than once. (See Docket Entry 1; Docket Entry 15 at 2-19; Docket Entry 21 at 2-

---

[6] Plaintiffs claim that: "[Payne] has a discount card provided for frequent Rite Aid shoppers and she uses it. . . . Payne is a 'bona fide' patron." (Docket Entry 15 at 19.) There is no support in the record for Plaintiffs' assertion that Payne possesses a Rite Aid discount card (see supra, n.3), and, moreover, such possession would not show that Payne shops at the Property as opposed to another Rite Aid pharmacy.

4.)  Accordingly, the second factor weighs against finding that Payne will visit the Property in the future.

### c.  Definitive Return Plans

Defendants contend that "Payne's intent to return to North Carolina . . . at an unspecified time in the future is too vague . . . ."  (Docket Entry 8 at 11.)  Plaintiffs, relying on Molski v. Price, 224 F.R.D. 479 (C.D. Cal. 2004), argue that: "Courts have granted standing to Plaintiffs with dual motivations to return to a place of public accommodation, even when one motivation was to determine if the place of public accommodation has been brought into ADA compliance."  (Docket Entry 15 at 18.) Plaintiffs also cite Clark v. McDonald's Corp., 213 F.R.D. 198 (D.N.J. 2003), and Colorado Cross Disability Coal. v. Hermanson Family Ltd. P'ship, No. 96-WY-2490-AJ, 1997 WL 33471623 (D. Colo. Aug. 5, 1997) (unpublished).  (See Docket Entry 15 at 18.)

"[W]hile Plaintiff may not need to identify a specific date on which [s]he plans to return to the [establishment], [s]he must have a non-speculative intent to return that amounts to more than an allegation that [s]he will return 'some day.'"  Norkunas, 2011 U.S. Dist. LEXIS 41431, at *10.  See also Lujan, 504 U.S. at 564 ("Such 'some day' intentions -- without any description of concrete plans, or indeed even any specification of when the some day will be -- do not support a finding of the 'actual or imminent' injury that our cases require."); Waffle House, 2011 U.S. Dist. LEXIS 69815, at *6 ("Payne has no definite plan to return.  Instead, she merely asserts that she will be in North Carolina again in 2011 and that

-14-

she would like to return to the restaurant at some point in the future."); <u>Tunnel Rd. (E & A)</u>, 2011 U.S. Dist. LEXIS 50637, at *8–10 ("[E]ven though the Complaint alleges that Plaintiff Payne 'plans to return to the property to avail herself of the goods and services offered to the public at the property in a manner equal to that offered to individuals who are not disabled, once the Defendant has eliminated the violations,' this conclusory allegation that she intends to visit the [defendant's establishment] some day in the future is insufficient to satisfy the constitutional requirements of standing."); <u>Tathata</u>, 2011 U.S. Dist. LEXIS 35136, at *11–12 ("Plaintiff's assertions that he 'plans to return to the property' are indefinite, and Plaintiff makes no specific allegation that he frequently travels to Raleigh.").

"[W]hile Title III may recognize that a plaintiff need not engage in the futile gesture of visiting a building containing known barriers to access that the owner has no intention of remedying, a plaintiff must at least prove knowledge of the barriers and that they would visit the building <u>in the imminent future</u> but for those barriers." <u>Norkunas</u>, 2011 U.S. Dist. LEXIS 41431, at *10 (internal quotation marks omitted, emphasis added) (citing <u>Betancourt v. Ingram Park Mall, L.P.</u>, 735 F. Supp. 2d 587, 599 (W.D. Tex. 2010) (quoting <u>Steger v. Franco, Inc.</u>, 228 F.3d 889, 892 (8th Cir. 2000))).

Payne's averments do not show that she has any definite plans to return to Chapel Hill, North Carolina, and specifically the

Property. Rather, her affidavit shows that she had plans to travel to Raleigh and Asheville, North Carolina (see Docket Entry 21, ¶¶ 7, 11), and that she has business in Asheville and Raleigh (see id., ¶ 4). Additionally, Plaintiffs allege vaguely that Payne "desires to visit the [Property]" (Docket Entry 1 at 6), but neither the Complaint, nor Payne's affidavit shows a definite intention to return even if the barriers to access ceased to exist (see id.; Docket Entry 21 at 2-4). In other words, there is no evidence that Payne seeks to patronize the establishment in the imminent future, "but for" the presence of the barriers.

Plaintiffs' argument, which relies on Price and two cases cited therein, that standing exists where a plaintiff has "dual motivations" for visiting the Property lacks merit. In Price, the handicapped California plaintiff filed an action seeking injunctive relief under the ADA against a California service station in connection with the plaintiff's inability to use the defendant's restroom because a designated handicap parking space was not available. 224 F.R.D. at 480-81. The plaintiff had subsequently made another visit to the establishment. Id. Defendant's establishment was located off of a highway; the plaintiff made 10 to 50 trips per year upon the very same highway and had taken the exit which leads to the service station "no more than five times." Id. The plaintiff testified that he intended to return to the service station to "check out its accessibility and to use the restroom facilities." Id. at 483. The district court denied the

defendant's motion to dismiss for lack of subject matter jurisdiction. Id. at 484-85.

In so ruling, the court observed that the defendant had taken issue with Plaintiff's motivation to return to the service station. Id. at 483. The court observed that "[it] c[ould] find no authority that suggests that . . . a plaintiff must possess an intention to return . . . that is not motivated in any way by advancing his litigation against that public accommodation" and noted that "[t]wo district court cases that have considered this issue under similar facts provide guidance":

> In Colorado Cross Disability Coalition v. Hermanson Family Limited Partnership, No. 96-WY-2490-AJ, 1997 WL 33471623 (D.Colo.1997), the court found that a plaintiff who used a wheelchair established standing based on his averment that he intended to shop at the defendant's stores. Id. at *6. The court so held notwithstanding the defendants' argument that the plaintiff's trip to the defendants stores "was not triggered by a desire to shop in the businesses there, but was rather driven by a desire to ferret out which buildings were in violation of the ADA's accessibility requirements." Id. at *4. The Court agrees that an ADA plaintiff's motivation -- but not his intent -- is irrelevant for purposes of determining standing.

> The Court is also guided by Clark v. McDonald's Corporation, 213 F.R.D. 198 (D.N.J.2003). In Clark, the court held that a plaintiff who was paraplegic had standing to assert claims against fast-food restaurants that he had visited notwithstanding the defendant's objection that the plaintiff was a mere "tester" and not a "patron" of the restaurant. Id. at 227-28. In other words, the defendant contended that the sole purpose of the plaintiff's visits was to test the ADA compliance of the restaurants. Id. The court rejected this proposition based on the evidence presented, because the complaint suggested that plaintiff visited each restaurant with the dual motivation of availing himself of the goods and services and verifying the restaurant's ADA compliance. Id. Such dual motivation, in the Clark

court's view, sufficed to make the plaintiff a "bona fide 'patron.'" *Id.*

*Price*, 224 F.R.D. at 483-84 (italics in original). The court concluded that "[t]he record here establishes that Plaintiff Molski has a similar dual motivation" and held that the plaintiff had met his burden of establishing "his intent to return to Defendant's service station[.]" Id. at 484.

In contrast with the foregoing authority, Defendants have not argued that Payne's "dual motivation" alone fails to support a finding of intent to return. (See Docket Entry 8 at 10-11.) Rather, Defendants have asserted that her intent is "too vague" to establish sufficient risk of future harm. (Id. at 11.) To the extent Plaintiffs rely on Payne's "dual motivation" to satisfy the future plan to return requirement, Payne's circumstances are factually distinguishable from Price. Unlike Price, Payne's residence and the Property are in different states (Docket Entry 1 at 2), Payne has only visited the Property once (Docket Entry 21, ¶ 12), and Payne does not claim to have even passed close by the Property on any other occasion as the plaintiff in Price did on numerous occasions (see id. at 2-4).

Recently, one court in the Fourth Circuit explained that a plaintiff's motivation to verify ADA compliance does not lessen her burden to meet the standing requirements:

> Nor is Plaintiff afforded standing simply by way of his status as an ADA "tester." . . . [T]he law makes clear that a Title III plaintiff cannot use her status as a tester to satisfy the standing requirements where she would not have standing otherwise. Thus, the naked assertion of a desire to return to a defendant

establishment for the sole purpose of confirming ADA-compliance, without more, is insufficient to establish standing.

_Norkunas_, 2011 U.S. Dist LEXIS 41431, at *18-19 (internal citations omitted).

The Court finds that Plaintiffs have not shown that Payne has concrete plans to return to Chapel Hill, North Carolina, and in particular to the Property. Therefore, this factor weighs against finding that Payne has standing.

### d. Travel Near Establishment

Defendants claim that "[Payne] has alleged no facts to indicate how frequently she plans on traveling to North Carolina, or whether she currently has any such plans." (Docket Entry 8 at 11.) Other courts have found that a plaintiff's general travel to a state does not support a finding that said plaintiff has demonstrated a threat of future harm related to a specific establishment within the state. See _Waffle House_, 2011 U.S. Dist. LEXIS 69815, at *7 (ruling that plaintiff's "travel to North Carolina once or twice per year" does not compel finding that she has standing); _Norkunas_, 2011 U.S. Dist. LEXIS 41431, at *10-11 (holding that plaintiff failed to show future injury based on travel through relevant metropolitan area three to four times per year, where plaintiff had no reason to drive to defendant's establishment); _Tunnel Rd. (E & A)_, 2011 U.S. Dist. LEXIS 50637, at *8-10 (finding that plaintiff failed to satisfy burden of showing injury in fact where plaintiff alleged previous visits and future

plans to return to North Carolina, but did not allege any intention
to return to city where defendant's establishment was located).

Payne avers that she has traveled to North Carolina and that
she has business associations, friends and connections in the State
(Docket Entry 21, ¶¶ 3, 6) and conducts business in Asheville and
Raleigh (id., ¶¶ 4, 8). Moreover, she alleges that she has
traveled through the State on her way to Virginia (id., ¶ 9) and
has stayed in Greensboro and Winston-Salem (id., ¶ 10).
Furthermore, Payne allegedly had plans to travel to Raleigh and
Asheville. (Id., ¶¶ 7, 11.) However, Plaintiffs have not shown
that Payne's travel to or through the State has brought or will
bring her near the Property. Moreover, Payne has not averred that
she has any contacts or reason to visit Chapel Hill. Thus, the
fourth factor does not support finding that Payne will return to
the Property in the future.

### e. Litigation History

Defendants assert that "[m]ultiple courts have held that it
seems rather unlikely that, with so many litigations, a plaintiff
like Payne would return to a remote Rite Aid Pharmacy . . . in
addition to all the other places of public accommodation she is
allegedly 'intending' to visit." (Docket Entry 8 at 11 (citing
Lamb v. Charlotte Cnty., 429 F. Supp. 2d 1302 (M.D. Fla. 2006);
Access for the Disabled, Inc. v. Rosof, No. 8:05-cv-1413-T-30TBM,
2005 U.S. Dist. LEXIS 37853, at *8 (M.D. Fla. Dec. 28, 2005)
(unpublished); Brother v. Tiger Partner, LLC, 331 F. Supp. 2d 1368,
1374 (M.D. Fla. 2004)).) Plaintiffs respond that: (1) Payne's role

as "an advocate" should not affect her "standing" (Docket Entry 15 at 23-24); (2) "Defendants are attacking individuals and associations (and their counsel) who assert their civil rights" (id. at 24); (3) "[t]he ADA provides for a private right of action, making individual lawsuits the only real way of enforcing the law" (id.); and (4) "the ADA is a remedial statute and should be broadly construed to effectuate its purpose" (id. (internal citations omitted)).

Courts are split with respect to whether to consider a plaintiff's filing of other ADA lawsuits for purposes of determining the plausibility of a plaintiff's intent to return to an establishment. Compare Access 4 All, Inc. v. Absecon Hospitality Corp., No. 04-6060 (JEI), 2006 U.S. Dist. LEXIS 79264, at *20 (D.N.J. Oct. 30, 2006) (unpublished) ("Indeed, because Plaintiff Esposito is a frequent litigant with the stated goal of ensuring ADA compliance, his claim of intent to return to the Hampton Inn to do additional examinations is made more, not less, credible."), with Lamb, 429 F. Supp. 2d at 1310-11 ("Plaintiff has filed numerous lawsuits under Titles II and III of the ADA. The Court finds that his allegations of intent to return to the property in question are not credible . . . .").

Defendants' authorities do not show that consideration of a plaintiff's litigation history under these circumstances is appropriate. Defendants cited one case which considered a plaintiff's litigation history, but examined the plausibility of the plaintiff's return to an establishment in the context of a

summary judgment motion.  See Tiger Partner, 331 F. Supp. 2d at 1374-75 (finding implausible plaintiff's intent to return to all fifty-four properties he sued and granting defendant's motion for summary judgment).  Additionally, in Access for the Disabled, the court did not consider the plaintiff's litigation history.  See Access for the Disabled, 2005 U.S. Dist. LEXIS 37853, at *8 (finding that plaintiff's status as a "tester" and plaintiff's intent to visit the facility to "'verify its compliance or non-compliance with the ADA' does little to support his allegation that he is truly threatened by a future injury" where coupled with plaintiff's failure to allege intent to visit store as customer, and plaintiff did not live in the area).

In Lamb, the district court, in granting the defendant's motion to dismiss for lack of subject matter jurisdiction, stated that the plaintiff had filed "numerous [ADA] lawsuits" and found that "his allegations of intent to return to the property in question are not credible . . . ." 429 F. Supp. 2d at 1310-11.  In reaching the foregoing finding, the court relied on Brother v. CPL Inv., Inc., 317 F. Supp. 2d 1358, 1369 (S.D. Fla. 2004).  Lamb, 429 F. Supp. 2d at 1310.  The CPL Inv. case is distinguishable from this case in that the court decided not to credit plaintiff's allegation regarding his intent to return to the defendant's establishment based, in part, on "extensive litigation," after "conduct[ing] a non-jury trial" and considering "testimony and evidence presented at trial[.]"  317 F. Supp. 2d at 1360 & 1369.

In Waffle House, the district court granted the defendant's motion to dismiss for lack of subject matter jurisdiction and found the plaintiff's "litigation history to be relevant." 2011 U.S. Dist. LEXIS 69815, at *7. The court stated:

> It is implausible that Payne, a Florida resident who travels approximately once or twice a year to this state, plans to return to each of the thirty-two (32) properties in North Carolina she has sued for noncompliance with the ADA. See, e.g., *Wilson v. Costco Wholesale Corp., 426 F. Supp. 2d 1115, 1123 (S.D. Cal. 2006); Brother v. Tiger Partner, LLC, 331 F. Supp. 2d 1368, 1375 (M.D. Fla. 2004)*.

Waffle House, 2011 U.S. Dist. LEXIS 69815, at *7. However, the plaintiff's litigation history was not a determinative factor, as the court held that other factors were "sufficient to conclude that [the plaintiff] lacks standing[.]" Id. Similarly, in Wilson, the district court found the plaintiff's litigation history "relevant, but not outcome determinative" in the context of granting the defendant's motion for summary judgment. 426 F. Supp. 2d at 1123.

Under the circumstances of this case, the Court should decline to treat Payne's prior litigation history as a relevant consideration with respect to whether she lacks standing.

### f.  Brief Conclusion

Plaintiffs have not met their burden of establishing Payne's standing to bring this action, because they fail to demonstrate a likelihood of future harm to Payne. They fail to show a possibility of Payne returning to the Property, because (1) a great distance exists between Payne's Florida residence and the North Carolina Property; (2) Payne has only patronized the Property once;

(3) Payne has no definitive plans to return to the Property, or even the city; and (4) Payne does not frequently travel through the Chapel Hill metropolitan area and specifically near the Property. Therefore, Defendants' Motion to Dismiss (Docket Entry 7) should be granted with respect to Payne.

### iii.  NAA

Defendants argue that NAA also lacks organizational standing and associational standing. (Docket Entry 8 at 12-16.) Plaintiffs respond that "[NAA] relies solely on its right to bring this claim based on associational standing . . . ." (Docket Entry 15 at 19.) Because Payne lacks standing to pursue her claim and NAA's standing is solely predicated upon her standing in this case, NAA lacks standing to proceed. See White Tail Park, 413 F.3d at 458 (stating that first prong of associational standing requires organization to show "its members would otherwise have standing to sue as individuals" (internal quotation marks omitted)). Therefore, Defendants' Motion to Dismiss (Docket Entry 7) should be granted with respect to NAA.

### B.  Motions to Amend

Plaintiffs seek to "amend their Complaint to include EDC [] as a Defendant." (Docket Entry 13 at 1; accord Docket Entry 16 at 2.) "The [C]ourt should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). Under this standard, the Court has some discretion, "but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion." Foman v. Davis, 371 U.S.

178, 182 (1962).  Reasons to deny leave to amend a pleading include "futility of amendment," id.  An amendment is futile where it cannot withstand a motion to dismiss.  See Perkins v. United States, 55 F.3d 910, 917 (4th Cir. 1995) ("In sum, the district court was justified in denying Mrs. Perkins's motion to amend her complaint because the proposed amendments could not withstand a motion to dismiss.").

Plaintiffs propose to amend their Complaint to add another defendant, but they do not seek to add allegations which relate to Payne's standing to bring this action.  The addition of EDC as a defendant would not alter the foregoing analysis regarding the possibility of future harm to Payne and her standing to bring this action.  Plaintiffs would continue to lack standing even if EDC were added as a defendant.  Thus, their amended complaint would fail to survive a Rule 12(b)(1) motion to dismiss.

Accordingly, Plaintiffs' motions to amend (Docket Entries 13 and 16) are denied.[7]

## III.  CONCLUSION

Plaintiffs have not met their burden of showing that Payne has standing to bring this action, and, in particular, that she faces a likelihood of future harm.  As a result, NAA also lacks associational standing and any proposed addition of another defendant fails for futility.

---

[7] For reasons stated in Deberry v. Davis, No. 1:08CV582, 2010 WL 1610430, at *7 n.8 (M.D.N.C. Apr. 19, 2010) (unpublished), the undersigned Magistrate Judge will enter an order, rather than a recommendation, as to said motions.

**IT IS THEREFORE RECOMMENDED** that Defendants' Motion to Dismiss (Docket Entry 7) be **GRANTED.**

**IT IS ORDERED** that Plaintiffs' Motions to Amend (Docket Entry 13 and 16) are **DENIED.**

                    /s/ L. Patrick Auld
                    **L. Patrick Auld**
            **United States Magistrate Judge**

September 27, 2011